# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SETH T. PARK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-515-R |
| TRICAN WELL SERVICE, L.P. and TRICAN WELL SERVICE LTD, | ) |
| Defendants. | ) |

## ORDER

Before the Court is Trican USA's Motion to Dismiss Plaintiff's Invasion of Privacy Claim, Doc. No. 15, and the Motion to Dismiss Trican Canada for Lack of Personal Jurisdiction, Doc. No. 16. Having considered the parties' submissions, the Court grants Trican USA's motion and denies Trican Canada's motion.

## Background

Defendant Trican Well Service Ltd. ("Trican Canada") is an international pressure pumping company that provides "multistage fracturing solutions to the oil and gas industry." Pet. ¶ 1. The company is headquartered in Alberta, Canada. *Id.* Defendant Trican Well Service, L.P. ("Trican USA") is a subsidiary of Trican Canada headquartered in Texas that provides operational support services for the oil and gas industry in Oklahoma and elsewhere in the United States. Doc. No. 16, Ex. 3, ¶ 4. Plaintiff worked for Trican USA as an equipment operator from July 2012 to April 2014 in Shawnee, Oklahoma. Pet. ¶ 13. During that time he worked with Chris Hubley, a Trican Canada Service Line Manager, for three months. Doc. No. 17, Ex. 1, ¶ 6. Mr. Hubley was at the Shawnee facility providing training and supervision to Trican USA employees. Pet. ¶ 14.

On April 8, 2014, Plaintiff gave his two-week notice to Trican USA. *Id.* ¶ 15. His district manager told him he could terminate his employment immediately and "still leave on good terms." *Id.* Plaintiff's last day at Trican USA was April 9, 2014. *Id.* He was then hired by Redback Coiling Tubing, LLC, an Oklahoma-based company. *Id.* ¶ 17.

On April 12, 2014, Mr. Hubley sent a text message to Plaintiff asking if he would like to work for Trican Canada. *Id.* ¶ 18. The two exchanged approximately 500 text and instant messages over the next two months concerning the details of the position. *Id.* ¶¶ 3, 18. The new job would require Plaintiff to work in Siberia, Russia directly under Mr. Hubley's supervision performing duties that he had previously performed for Mr. Hubley in Oklahoma. *Id.* ¶ 19. The contract would be for two years, Plaintiff would be paid a base salary of $120,000 per year, and he would work for thirty-five continuous days and then be off for thirty-five continuous days. *Id.* Plaintiff alleges that after a conversation with Mr. Hubley on April 16, 2014 in which Plaintiff stated in a text message, "Yes I absolutely want the position," he entered into an employment contract with Trican Canada. *Id.* ¶¶ 22-23. Two senior Trican Canada managers, Kevin Young and Mike Burbell, also confirmed Plaintiff's employment in subsequent telephone conversations. *Id.*

After addressing issues related to Plaintiff's passport and making arrangements to move his family from Oklahoma to South Carolina in preparation for the move to Russia, *id.* ¶¶ 25-31, Plaintiff spoke with Casey Roberson, an HR representative, on May 14, 2014 about how his income would be taxed. *Id.* ¶ 33. Ms. Roberson told Plaintiff "Trican had no information regarding Mr. Park working internationally." *Id.* On May 25, Mr.

Hubley texted Plaintiff "promising that everything was going well with Mr. Park's employment." *Id.* ¶ 34. But he informed Plaintiff for the first time that day that he had been placed on a "non-rehirable" list. *Id.* Mr. Hubley "texted that he was 'digging' into Mr. Park's personal file to determine who put Mr. Park on the 'non-rehirable' list." *Id.* ¶ 35. On June 25, Kevin Young "assured Mr. Park that Chris Hubley was traveling to Trican Canada's headquarters to resolve the issues with Mr. Park's employment." *Id.* ¶ 37. That was the last communication Plaintiff had with a Trican Canada employee. *Id.*

Plaintiff has sued Trican Canada for breach of contract, promissory estoppel, and false representation. *Id.* at 11-14. He has sued Trican USA for false light invasion of privacy, false representation, and defamation. *Id.* at 15-19. The Court will first address Trican USA's motion to dismiss the invasion of privacy claim, and will then analyze the issue of personal jurisdiction over Trican Canada.

## **Invasion of Privacy**

### A. Standard of Review

In considering a motion under Rule 12(b)(6), the Court must determine whether the plaintiff has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when the complaint provides mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 570 (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). For the purpose of making the dismissal determination, the Court accepts all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and construes the allegations in the light most favorable to the claimant. *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

B. Analysis

Plaintiff alleges Trican USA placed him in a false light by disclosing facts in his personnel file, including the fact that he was put on the "non-rehirable" list, to Chris Hubley and other Trican Canada employees. Pet. ¶¶ 34-36, 65. Oklahoma has adopted the four categories of invasion of privacy contained in The Restatement of Torts, Second, including publicly placing someone in a false light. *McCormack v. Oklahoma Publ'g Co.*, 613 P.2d 737, 740 (Okla. 1980). To succeed on this claim, a plaintiff must show, in relevant part, that the defendant gave "publicity to a matter concerning another that places the other before the public in a false light." *Id.*

Trican USA argues Plaintiff's false light claim fails for lack of publicity. "'Publicity' means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Eddy v. Brown*, 715 P.2d 74, 78 (Okla. 1986) (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a (1977)). "The difference is not one of the means of communication … [but] one of a communication that reaches, or is sure to reach the public." *Id.* (quoting § 652D cmt. a). In *Eddy v. Brown*, the Supreme Court of Oklahoma held when "only a small group of coworkers were made privy to [the

4

plaintiff's] private affairs," he failed to satisfy the publicity requirement of his false light claim. *Id.* The court then distinguished *Eddy* in *Guinn v. Church of Christ of Collinsville*, 775 P.2d 766, 781 (Okla. 1989), a case in which "the Elders read scriptures that implicated [the] Parishioner's private life to a church congregation comprising five percent of [the] Parishioner's hometown population." The court held that the plaintiff had satisfied the publicity requirement because that group of people were, "in many respects, [the] Parishioner's public." *Id.*

Plaintiff argues "it is plausible from [his] allegations that Trican USA released his personal information to more than just a small group of people." Doc. No. 18, at 6. He contends his allegation that Trican USA published this information to "other Trican Canada employees" could plausibly be read to "include hundreds or thousands of individuals who do not work for Trican USA." *Id.* at 7. In his view, the motion to dismiss "is premature and should be denied until such time that discovery can establish the number of individuals who received Trican USA's published information." *Id.*

Plaintiff's contention that his personal information was revealed to "hundreds or thousands of individuals" is merely speculative. According to the Petition, on May 25, 2014, Chris Hubley informed Plaintiff that he was on a "non-rehirable" list. Pet. ¶ 34. That day, Mr. Hubley "was able to access information in Mr. Park's Trican USA's personnel file and ultimately determined who placed Mr. Park on the 'non-rehirable' list." *Id.* ¶ 35. On June 25, Kevin Young told Plaintiff that Mr. Hubley was going to Trican Canada's headquarters "to resolve the issues with Mr. Park's employment." *Id.* ¶ 37. The only specific individuals Plaintiff alleges knew about information in his personnel

5

file were Mr. Hubley and possibly Mr. Young. Although the allegation that Trican USA shared Plaintiff's private information with "other Trican Canada employees" is *consistent* with the fact that it shared this information with hundreds or thousands of people, that allegation alone does not satisfy *Twombly's* plausibility requirement on this issue. *Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (citation and internal quotation marks omitted)). Even taking the allegations in the Petition as true, it would not be reasonable to infer that Trican USA disclosed Plaintiff's private information to more than just a small group of people. Therefore, under *Eddy*, Plaintiff's claim for false light invasion of privacy is dismissed for failure to state a claim.

## Personal Jurisdiction

### A. Standard of Review

When, as in this case, the Court has ordered no evidentiary hearing, Plaintiff need only make a prima facie showing that personal jurisdiction exists over Defendant. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). In determining the facts necessary to establish personal jurisdiction, the Court accepts as true the well pled allegations set forth in the Petition, but only "to the extent they are uncontroverted by defendant's affidavits." *Id.* (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). If there is conflicting evidence, all factual disputes are resolved in Plaintiff's favor. *Id.*

### B. Analysis

"Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state." *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir. 1982) (citations omitted). "The test for exercising long-arm jurisdiction in Oklahoma is to determine first whether the exercise of jurisdiction is authorized by statute and, if so, whether such exercise of jurisdiction is consistent with constitutional requirements of due process." *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1385-86 (10th Cir. 1980) (citations omitted). Because the Oklahoma long-arm statute extends jurisdiction to the maximum extent permitted by due process, "this two-part inquiry collapses into a single due process analysis." *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988) (quoting OKLA. STAT. ANN. tit. 12, § 2004(F) ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States.")).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (citation and footnote omitted). Accordingly, a court "may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (citation omitted). If the minimum contacts test is met, the Court must determine if the exercise of personal jurisdiction over Defendant would offend "traditional notions of fair play and substantial justice," or, instead, is "reasonable." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th

Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987)).

### 1. Minimum Contacts

The "minimum contacts" test can be satisfied in one of two ways. "First, if a defendant has 'continuous and systematic general business contacts' with the forum state, it may be subjected to the general jurisdiction of the forum state's courts." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1066 (10th Cir. 2007) (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 (1984)). Second, a court may exercise specific jurisdiction over a nonresident defendant if the defendant has "such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.'" *OMI*, 149 F.3d at 1091 (quoting *World-Wide Volkswagen*, 444 U.S. at 297)). With regard to specific jurisdiction, "we must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from 'actions by the defendant *himself* that create a substantial connection with the forum state.'" *Id.* (quoting *Asahi*, 480 U.S. at 109) (citing *Burger King*, 471 U.S. at 472). "The purpose of this [purposeful availment] requirement is to 'ensure[] that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (citations omitted). Based on the following analysis, the Court finds specific jurisdiction exists over Trican Canada, and therefore does not address the issue of general jurisdiction.

Plaintiff has brought both contract and tort claims against Trican Canada. "In the tort context, we often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Both tests are satisfied here.

"A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (citing *Burger King*, 471 U.S. at 473). "In order to assess whether minimum contacts occurred in a contract case, we look at prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008) (quoting *Burger King*, 471 U.S. at 479) (internal quotation marks omitted).

Plaintiff directs the Court to *AST Sports*, a case in which the Tenth Circuit held that non-resident defendants had established minimum contacts in the forum state. 514 F.3d at 1060. The plaintiff, AST, was a Colorado corporation and the defendants were CLF, a corporation established under the laws of Great Britain, and CLF's president. *Id.* at 1055. Both companies sold health, nutrition, and vitamin products. *Id.* The Circuit considered "[e]specially significant" to its analysis the fact that one of the defendants approached the plaintiff about a business opportunity, "and then formed an ongoing business relationship to facilitate the same." *Id.* at 1059. It noted that "[p]hone calls,

9

letters, facsimiles, and emails provide additional evidence that [the foreign defendant] pursued a continuing business relationship with [the plaintiff]." *Id.* (citations omitted) (internal quotation marks omitted). Plaintiff asserts this case to analogous to *AST Sports* in that Trican Canada, through Chris Hubley, approached him about a possible business opportunity and then followed up with numerous messages to finalize his employment. Doc. No. 17, at 14-16.

In response, Trican Canada argues *AST Sports* is distinguishable from the present facts because in that case, "the plaintiff and defendant had a relationship that *preexisted* the events in the suit." Doc. No. 19, at 3. It points out that in *AST Sports*, the parties had a business relationship that lasted for seven years prior to the events giving rise to suit, which involved the defendant placing orders to the plaintiff that the plaintiff would fill in Colorado and then ship to England. 514 F.3d at 1059. In contrast, Trican Canada contends "Park cannot point to an extensive, continuing relationship that predated the events at issue and involved the defendant's travel to the forum state." Doc. No. 19, at 3.

Although the parties in *AST Sports* certainly had a business relationship lasting longer than that between Plaintiff and Trican Canada, the negotiation period for Plaintiff's position in Russia is not the only link between the parties in this case. The parties' "actual course of dealing" includes a three-month period prior to the events giving rise to this suit in which Plaintiff worked with Mr. Hubley, a Trican Canada employee, in Oklahoma. Doc. No. 17, Ex. 1, ¶¶ 5-6. Hubley then initiated contact with Plaintiff in Oklahoma to notify him of a job opportunity with Trican Canada. *Id.* ¶ 9. Plaintiff's claims arise directly from these communications with Mr. Hubley, a

representative of Trican Canada, and these communications arose directly from Mr. Hubley's work with Plaintiff in Oklahoma.[1] Trican Canada should reasonably anticipate being haled into court when one of its employees works for three months in Oklahoma training and supervising an Oklahoma resident and that employee then initiates a conversation with the resident, in Oklahoma, about working for Trican Canada. Although Plaintiff would not have lived in Oklahoma during the duration of the contract term, or, presumably, performed any of his obligations under the contract in Oklahoma, these facts are not determinative. Trican Canada purposefully directed its activities at Oklahoma by sending its employees to train and supervise Trican USA workers, and it used one of those employees to purposely avail itself of the opportunity to enter into negotiations and an employment contract with an Oklahoma resident. The minimum contacts test is met in this case.

## 2. Reasonableness

Trican Canada now bears the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009) (quoting *Burger King*, 471 U.S. at 477) (internal quotation marks omitted). "Such cases are rare." *Id.* To determine if exercising jurisdiction would be unreasonable and would violate "traditional notions of fair play and substantial justice," courts consider five factors: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest

---

[1] Plaintiff does not allege when exactly he worked with Mr. Hubley, but he does state he worked for Trican USA from July 12, 2012 to April 9, 2014, and that Mr. Hubley contacted him on April 12, 2014. Doc. No. 17, Ex. 1, ¶¶ 3, 9.

11

in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113).

### a) Burden on Trican Canada

Trican Canada presents no argument as to the burden of defending this action in Oklahoma. The evidence suggests that it sends employees to Oklahoma on a regular basis. *See* Doc. No. 17, Ex. 1, ¶¶ 4-7, Ex. 7, ¶¶ 2-4, Ex. 8, ¶¶ 3-4, Ex. 9, ¶¶ 3-4. Moreover, "[a]s in any case in which the parties reside in different fora, one side must bear the inconvenience of litigating 'on the road,'" and Trican Canada has "not indicated that [its] defense of this case would be hindered by the territorial limits" on this Court's subpoena power, or would be "hampered in any other significant way." *See Dudnikov*, 514 F.3d at 1081. This factor does not weigh in favor of either party.

### b) Oklahoma's Interest in Resolving the Dispute

Trican Canada argues Oklahoma has little interest in resolving this dispute because the alleged contract called for Plaintiff to work in Russia, not Oklahoma, and he would not have resided in Oklahoma at any point during the contract term. Doc. No. 16, at 10. It ignores the well-established fact that "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI*, 149 F.3d at 1096 (citing *Burger King*, 471 U.S. at 483). As a resident of Oklahoma City, Pet. ¶ 7, this factor weighs in favor of Plaintiff.

### c) Plaintiff's Interest in Convenient and Effective Relief

Trican Canada also asserts that if the claims against it were dismissed for lack of personal jurisdiction, Plaintiff could still obtain relief in a forum that does have personal jurisdiction over it. Doc. No. 16, at 10-11. It does not suggest any U.S. state in which it would be subject to personal jurisdiction. As an individual resident of Oklahoma, it would be much more convenient for Plaintiff to litigate here, in the city of his residence. The third factor weighs in Plaintiff's favor.

### d) Interest in Obtaining the Most Efficient Resolution of Controversies[2]

The fourth factor requires the Court to examine whether Oklahoma is the most efficient state in which to litigate this dispute. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI*, 149 F.3d at 1097 (citations omitted).

First, most of the witnesses the Court is aware of reside outside of Oklahoma. Plaintiff resides in Oklahoma, but to the Court's knowledge, other witnesses include Chris Hubley, Casey Roberson, Kevin Young, and Mike Burbell. These individuals presumably reside either in Canada or Russia. Furthermore, assuming Mr. Hubley had the authority to make the final decision with regard to Plaintiff's employment, Pet. ¶ 24, because Mr. Hubley was in Russia at the time of the negotiations, Doc. No. 17, Ex. 2, at 1, the "wrong underlying the lawsuit" did not occur in this state.

---

[2] **Although Plaintiff contends the last two reasonableness factors do not apply to this matter, Doc. No. 17, at 28, the Tenth Circuit in *OMI Holdings* addressed these factors when deciding whether litigating that dispute in Kansas would be more efficient than in Canada or would interfere with Canada's sovereignty. 149 F.3d at 1097-98.**

With regard to the substantive law governing the case, although not addressed by the parties, it appears Plaintiff's breach of contract claim will be governed by Russian law, and his false representation claim will be governed by Oklahoma law. *See* OKLA. STAT. ANN. tit. 15, § 162 (West) ("A contract is to be interpreted according to the law and usage of the place where it is to be performed."); *Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618, 626-27 (Okla. 2003) ("[W]hen the plaintiff acted in reliance upon the defendant's representations in a single state, this state will usually be the state of the applicable law, with respect to most issues, if … the defendant's representations were received by the plaintiff in this state."); *Boyd Rosene & Assocs. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999) (noting that federal courts sitting in diversity apply the substantive law of the forum state, including its choice-of-law principles). Trican Canada does not argue that any of the claims are governed by Canadian law.

Finally, it appears jurisdiction is necessary to prevent piecemeal litigation in this case. Plaintiff has also sued Trican USA in this matter, and it is unclear whether a Canadian court would have jurisdiction over the subsidiary company.

This factor does not favor either party. On one hand, almost all of the witnesses to the alleged wrong, which occurred outside of Oklahoma, are not located in this state. Additionally, it appears Russian law would apply to the breach of contract claim. On the other hand, Oklahoma law likely governs the false representation claim and maintaining jurisdiction here may be necessary to prevent piecemeal litigation.

    **e)** Interest in Furthering Fundamental Substantive Social Policies

The last factor to consider is whether the exercise of personal jurisdiction over Trican Canada would affect the substantial social policy interests of Canada. *OMI*, 149 F.3d at 1097. Facts relevant to this analysis are whether one of the parties is a citizen of Canada, whether Canadian law governs the dispute, and whether the foreign citizen chose to conduct business with a resident of Oklahoma. *Id.* at 1098. "The possible conflict with a foreign nation's sovereignty 'is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court.'" *OMI*, 149 F.3d at 1097 (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984)).

Trican Canada is a resident of Canada, Doc. No. 16, Ex. 3, ¶ 3, but it chose to conduct business with Plaintiff, a resident of Oklahoma. Furthermore, as noted above, it appears Plaintiff's breach of contract and false representation claims will not be governed by Canadian law. The Court understands that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field. *Asahi*, 480 U.S. at 115 (citations omitted). But in this case, the Court's exercise of personal jurisdiction over Trican Canada would not affect Canada's policy interests. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1281 (10th Cir. 2005) ("Sporoptic is a French company. However, this dispute is not governed by French law, and Sporoptic chose to conduct business with Pro Axess, a resident of Utah. Therefore, we find that an exercise of personal jurisdiction would not affect France's policy interests."). This factor favors Plaintiff.

Because three of the reasonableness factors favor Plaintiff and two do not favor either party, the undersigned concludes Trican Canada has not satisfied its burden of demonstrating that exercising jurisdiction would be unreasonable and inconsistent with traditional notions of fair play and substantial justice.

## **Conclusion**

In accordance with the foregoing, Trican USA's Motion to Dismiss Plaintiff's Invasion of Privacy Claim, Doc. No. 15, is GRANTED, and the Motion to Dismiss Trican Canada for Lack of Personal Jurisdiction, Doc. No. 16, is DENIED.

IT IS SO ORDERED this 17th day of August, 2015.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE